(Del. Rev. 5/2014) Pro Se Employment Discrimination Complaint

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

Jennifer Hulton

_____

(Name of Plaintiff or Plaintiffs)

v.

Artesian Water Company

_____

(Name of Defendant or Defendants)

Civ. Action No. 22-1584
(To be assigned by Clerk's Office)

**COMPLAINT FOR EMPLOYMENT DISCRIMINATION**
(Pro se)

Jury Demand?
☒ Yes
☐ No

1. This action is brought pursuant to (check all spaces that apply):

   ☐ Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, for employment discrimination on the basis of race, color, religion, sex, or national origin.

   ☐ Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.*, for employment discrimination on the basis of age. My year of birth is: _____.

   ☐ Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, *et seq.*, for employment discrimination on the basis of a disability by an employer which constitutes a program or activity receiving federal financial assistance.

   ☒ Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*, for employment discrimination on the basis of disability.

2. Plaintiff resides at: 330 Clearfield Dr
   (Street Address)
   Lincoln University      PA      19352
   (City)      (County)   (State)   (Zip Code)
   610-705-9470
   (Area Code) (Phone Number)   Attach additional sheets if more than one Plaintiff.

3. Defendant resides at, or its business is located at  664 Churchmans Rd
   (Street Address)
   Newark                     DE      19702
   City       (County)         (State)   (Zip Code)

**Attach additional sheets if more than one Defendant.**

1

4. The discriminatory conduct occurred in connection with plaintiff's employment at, or application to be employed at, defendant's __Artesian Water Company__ place of business
(Defendant's Name)
located at __664 Churchmans Rd__
(Street Address)
__Newark__                                    __DE__       __19702__ .(
City)         (County)         (State)     (Zip Code)

5. The alleged discriminatory acts occurred on __9/1/2020 - 8/2/2021__
(Day)   (Month)   (Year)

6. The alleged discriminatory practice ☒ is ☐ is not continuing.

7. On __15__, __Sept__ (Aug), __2022__, Plaintiff filed charges
(Day)   (Month)   (Year)

with the Department of Labor of the State of Delaware: __Equal Oppurtunity Commission__
(Agency)
__801 Market St__     __Phila PA__
(Street Address)                    (City)      (County)
__PA__                __19107__, regarding defendant's alleged discriminatory conduct.
(State)     (Zip Code)

8. On __15__, __Sept__, __2022__, Plaintiff filed charges
(Day)   (Month)   (Year)
with the Equal Employment Opportunity Commission of the United States regarding defendant's alleged discriminatory conduct.

9. The Equal Employment Opportunity Commission issued the attached Notice-of-Right-to-Sue letter which was received by plaintiff on: __14__, __9__, __2022__.
(Day)   (Month)   (Year)

**(NOTE: ATTACH NOTICE-OF-RIGHT-TO-SUE LETTER TO THIS COMPLAINT.)**

10. The alleged discriminatory acts, in this suit, concern:

   A. ☐ Failure to employ plaintiff.
   B. ☒ Termination of plaintiff's employment. Plaintiff was terminated from employment on the following date: __8/2/2021__.
   C. ☐ Failure to promote plaintiff. Plaintiff was refused a promotion on the following date: _____.
   D. ☐ Other acts (please specify): _____

11. The conduct of Defendant(s) was discriminatory because it was based on (check all that apply):

2

    A. ☐ Plaintiff's race
    B. ☐ Plaintiff's color
    C. ☐ Plaintiff's sex
    D. ☐ Plaintiff's religion
    E. ☐ Plaintiff's national origin
    F. ☐ Plaintiff's age
    G. ☒ Plaintiff's disability

12. A copy of the charges filed with the Department of Labor of the State of Delaware and/or the Equal Employment Opportunity Commission is attached to this complaint and is submitted as a brief statement of the facts of plaintiff's claim.

**(NOTE: ATTACH A COPY OF THE CHARGES FILED WITH THE DEPARTMENT OF LABOR OF THE STATE OF DELAWARE AND/OR THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION OF THE UNITED STATES TO THIS COMPLAINT.)**

THEREFORE, Plaintiff asks the Court to grant such relief as may be appropriate, including but not limited to (check all that apply):

    A. ☐ Injunctive relief (specify what you want the Court to order): _____
    B. ☒ Back pay.
    C. ☐ Reinstatement to former position.
    D. ☒ Monetary damages in the amount of $106,000
    E. ☐ That the Court appoint legal counsel.
    F. ☒ Such relief as may be appropriate, including costs and attorney's fees.
    G. ☐ Other (specify): _____

**I/We declare under penalty of perjury that the foregoing is true and correct.**

Date: 12/12/2022

_[signature]_
(Signature of Plaintiff)

_____
(Signature of additional Plaintiff)

**NOTICE**
Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

## Statement of Claim:

Ms. Hulton began her employment with Artesian on November 1, 2016, as a Lead System Analyst. Ms. Hulton continued in this role until her wrongful termination on August 2, 2021. Throughout her employment with Artesian, Ms. Hulton has gone above and beyond to service the company as evidenced by her exceptional professional reputation. This can be confirmed by performance reviews and confirmation from others within the organization.

Ms. Hulton tore her ACL outside of work hours in early February 2020. On June 8, 2020 Ms. Hulton spoke with her manager, Ray Kelly; to let him know that she had been advised to have surgery to repair her total ACL tear. During that call, Ms. Hulton told Mr. Kelly that the reasoning for the surgery was that her knee would give out as Ms. Hulton was descending stairs which typically occurred during business hours due to her rush to return to work. During the call on June 8,2020, Ms. Hulton also relayed to Mr. Kelly that she had most recently slipped down a few steps during work hours the previous week which had caused additional pain to her injured leg and which solidified the decision to move forward with surgery. Mr. Kelly never informed Ms. Hulton nor was she aware that she should have reported the stair slipping to HR. It was not until December 2021 did a doctor specializing in chronic pain tell Ms. Hulton that her slip during business hours should have been reported to HR. Also, during the 6/8/2020 call Ms. Hulton discussed with Mr. Kelly that the doctor told her some patients were able to return to work within a couple of weeks after surgery on limited hours. Mr. Kelly was very against Ms. Hulton returning to work on any restrictions and stated that he would talk to HR about it as he did not agree. Ms. Hulton did discuss returning to work with limitations again with Mr. Kelly right before her surgery at which time he again reiterated his disagreement.

Ms. Hulton's return had ACL reconstructive surgery at the end of June of 2020. Following her surgery, Ms. Hulton remained out of work until August 31, 2020 when initially the plan was for Ms. Hulton to return to a partial 7-hour work schedule. It quickly became apparent with Ms. Hulton and her surgeon that due to a significant increase in pain when attempting to sit for 7 hours to perform her job duties that she would not be able to work the full 7 hours. In continuation of her recovery, Ms. Hulton's doctor ordered her to work a restricted schedule. It was immediately after the reduction of hours that Ms. Hulton started to face hostility and attacks by IT management, primarily Mr. Kelly and Mr. Pierre Anderson, and by HR primarily Ms. Patti Cumpston and Mr. Carmen Hunter.

During September 2020 until Ms. Hulton was terminated on August 2, 2021 Ms. Hulton not only reported her concerns multiple times to human resources and IT management on multiple occasions but she also attempted to offer alternatives to perform her job duties on a restrictive work schedule. No actions or even conversations were taken by HR or IT Management to protect Ms. Hulton due to her disability. In fact, Ms. Hulton reports was made to comply with extra administrative obligations, which others in her department were not. As Ms. Hulton continued to struggle with her recovery and worked with her surgeon and her primary doctor to identify the chronic pain she was experiencing, Ms. Hulton stress levels where significantly increased with the hostility from IT management and HR personnel. Both Mr. Kelly and Ms. Cumpston made statements that her surgery was "elective".

With Ms. Hulton's request for leave in April 2021, during a phone call with Ms. Cumpston and Mr. Hunter on April 19, 2021, Ms. Cumpston stated the pain Ms. Hulton stated she was experiencing did not correlate with her surgery. It was also during the 4/19/2021 call that Ms. Cumpston said Ms. Hulton's restrictions were a "hardship on company" and if she did not return to duty with no restrictions than the company would have no alternative than to fire her.

Upon her return to work on May 20, 2021 without restrictions, Ms. Hulton was required to work excessive hours throughout the next several months. Due to her workload, Ms. Hulton was frequently forced to work more than fifteen hours a day in order to meet unreasonable deadlines. On May 21,2021, Ms. Cumpston and Mr. Hunter called Ms. Hulton and informed her, she was required to work in the office. Ms. Hulton attended a department meeting on 5/20/2021, for which Mr. Anderson informed the group that working in the office would start in July. As of 5/20/2021 the majority of the department where working from home. When Ms. Hulton tried to explain that to Ms. Cumpston, Ms. Cumpston was extremely hostile and informed Ms. Hulton that Mr. Anderson expected her in the office.

Ms. Hulton had been diagnosed with Complex Reginal Pain Syndrome in September 2021. It also should be noted since Ms. Hulton continues to work in the Information Technology industry and long sedentary hours are required and while Ms. Hulton still suffers pain from related to Complex Regional Pain Syndrome, the hostility and stress Ms. Hulton experienced at Artesian Water played a significant role in pain levels.

Below are the highlights on the discrimination, hostility, and intimidation Ms. Hulton faced between September 2020 through August 2, 2021.

- Ms. Hulton can provide multiple examples of when Mr. Kelly and/or Mr. Anderson did not respond or would not provide information to Ms. Hulton that would allow Ms. Hulton to work effectively within her restricted work schedule and meet agreed upon dates. Mr. Kelly would require Ms. Hulton to put due dates on her work which she did being mindful of her restricted hours and subsequently Mr. Anderson and Mr. Kelly would add additional administrative work be completed within the same timeframe some of the work not required by others in the department.
- Mr. Kelly and/or Mr. Anderson constantly questioned everything Ms. Hulton did either in meetings or via emails, this constant questioning and having to justify everything resulted in consuming a majority of Ms. Hulton's restrictive hours. No others in Ms. Hulton's department were called out and questioned like Ms. Hulton. Ms. Hulton can provide witness's, including managers from other departments, and text messages as examples.
- Mr. Kelly would not respond to Ms. Hulton's calls or request for meetings. When Ms. Hulton requested to meet with Mr. Kelly to discuss the timing of a project for a system that she was primary on. Due to another co-worker going out on leave for a surgery Ms. Hulton was attempting to push out the go-live from October until November allowing her to complete other commitments and working within her restricted hours. Rather than speak with Ms. Hulton, Mr. Kelly reassigned the work to another co-worker who had no knowledge of the process. When Ms. Hulton emailed Mr. Kelly in an attempted to have a conversation and concerns about meeting her job description, Mr. Kelly copied HR and stated as manager he was allowed to assign work. It should be noted that project did not go live until December.
- Ms. Hulton attempted to contact HR, Dean Hagans, Carmen Hunter, Patti Cumpston multiple times regarding concerns about previously committed dates and new work expectations and work hour restrictions, increase in pain and inability to take breaks but they were never

acknowledged or was informed breaks weren't noted in the doctor's note. Examples can be provided.
- Ms. Hulton would frequently speak with the surgeon and/or staff over the phone between on-site appointments. If there were changes to the doctors notes the surgeon's office would send the note directly to Artesian HR. The majority of the time the notes just had additions to the previous notes and or had incorrect dates, rather than inform Ms. Hulton of discrepancies, Ms. Hulton would work/fill out time sheets based on what was discussed with the surgeon only to find out the incorrect date was put on the note and then Artesian would tell Ms. Hulton she was dishonest on her timesheet or not following doctor's orders. Examples can be provided
- Ms. Hulton was consistently given tighter time-frame than other workers and given a heavier work load when she was not on restricted hours. Therefore requiring Ms. Hulton to 16–18-hour days to meet deadlines. There was 2 times Ms. Hulton can provide that she was required to work until early morning to meet the deadline. Ms. Hulton can also provide evidence on when tasks were reassigned to another co-worker, the due date was extended with more days in-between the assignment date and due date Ms. Hulton was provided.
- Ms. Hulton can provide examples or witness's to people questioning why I was being treated differently, questioning of working and causing delays, overall tension and hostility shown to me